IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF FLORIDA
PANAMA CITY DIVISION


JAMES BARRY,
      Petitioner,

vs.                                Case No.:  5:14cv20/RS/EMT

JULIE L. JONES,
      Respondent.
_____/

## SECOND REPORT AND RECOMMENDATION

This cause is before the court on Petitioner's petition for writ of habeas corpus filed pursuant to 28 U.S.C. § 2254 (doc. 1).  Respondent filed an answer (doc. 27) and relevant portions of the state court record (*see* doc. 15, Exhibits).  The court provided Petitioner an opportunity to file a reply (*see* doc. 28), but he has not done so.

The case was referred to the undersigned for the issuance of all preliminary orders and any recommendations to the district court regarding dispositive matters.  *See* N.D. Fla. Loc. R. 72.2(B); *see also* 28 U.S.C. § 636(b)(1)(B), (C) and Fed. R. Civ. P. 72(b).  After careful consideration of all issues raised by Petitioner, it is the opinion of the undersigned that no evidentiary hearing is required for the disposition of this matter, Rules Governing Section 2254 Cases 8(a).  It is further the opinion of the undersigned that the pleadings and attachments before the court show that Petitioner is not entitled to relief.

I.      BACKGROUND AND PROCEDURAL HISTORY

The relevant aspects of the procedural background of this case are established by the state court record (*see* doc. 15).[1]  Petitioner was charged in the Circuit Court in and for Bay County,

---

[1] Hereinafter all citations to the state court record refer to the exhibits submitted by Respondent (*see* doc. 15, Exhibits).  If a cited page has more than one page number, the court cites to the "Bates stamp" page number.

Florida, Case No. 2009-CF-3568, with one count of burglary of a conveyance with battery (Ex. B). Following a jury trial, he was found guilty as charged (Exs. D, E).  On August 17, 2010, Petitioner was sentenced as a habitual felony offender to 84 months in prison followed by 120 months of probation, with pre-sentence jail credit of 286 days (Exs. I, J).

Petitioner, through counsel, appealed the judgment to the Florida First District Court of Appeal ("First DCA"), Case No. 1D10-4556 (Exs. K, L).  The First DCA affirmed the judgment per curiam without written opinion on August 24, 2011, with the mandate issuing September 20, 2011 (Ex. O).  Barry v. State, 68 So. 2d 236 (Fla. 1st DCA 2011) (Table).  Petitioner did not seek further review.

On July 16, 2012, Petitioner filed a motion for post-conviction relief, pursuant to Rule 3.850 of the Florida Rules of Criminal Procedure (Ex. P1).  In an order rendered October 10, 2012, the state circuit court struck the motion as facially insufficient, without prejudice to Petitioner's filing an amended motion within thirty days (Ex. Q).  Petitioner filed an amended motion on November 8, 2012 (Ex. R1).  In an order rendered February 25, 2013, the state circuit court again struck the motion as facially insufficient, without prejudice to Petitioner's filing a second amended motion within thirty days (Ex. S).  Petitioner filed a second amended motion (Ex. T2).  The state circuit court summarily denied it on June 20, 2013 (Ex. U).  Petitioner appealed the decision to the First DCA, Case No. 1D13-3465 (Ex. V).  The First DCA affirmed the decision per curiam without written opinion on November 7, 2013, with the mandate issuing December 3, 2013 (Ex. W).  Barry v. State, 124 So. 3d 919 (Fla. 1st DCA 2013) (Table).

Petitioner filed the instant federal habeas action on January 16, 2014 (doc. 1).  Respondent previously asserted a statute of limitations defense, but the court rejected it (see docs. 15, 20, 22).

II.    STANDARD OF REVIEW

Section 2254(a) of Title 28 provides that "a district court shall entertain an application for a writ of habeas corpus in behalf of a person in custody pursuant to the judgment of a State court" upon a showing that his custody is in violation of the Constitution or laws of the United States.  As the instant petition was filed after April 24, 1996, it is subject to the more deferential standard for habeas review of state court decisions under § 2254 as brought about by the Anti-Terrorism and

Effective Death Penalty Act of 1996 (AEDPA).  Pub.L. 104-132, § 104, 110 Stat. 1214, 1218–19.

In relevant part, section 2254(d) now provides:

> (d)  An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
> > (1)  resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
> >
> > (2)  resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C.A. § 2254 (2002).

The United States Supreme Court explained the framework for § 2254 review in <u>Williams v. Taylor</u>, 529 U.S. 362, 120 S. Ct. 1495, 146 L. Ed. 2d 389 (2000).[2]  The appropriate test was described by Justice O'Connor as follows:

> In sum, § 2254(d)(1) places a new constraint on the power of a federal habeas court to grant a state prisoner's application for a writ of habeas corpus with respect to claims adjudicated on the merits in state court.  Under § 2254(d)(1), the writ may issue only if one of the following two conditions is satisfied—the state court adjudication resulted in a decision that (1) "was contrary to . . . clearly established Federal law, as determined by the Supreme Court of the United States," or (2) "involved an unreasonable application of . . . clearly established Federal law, as determined by the Supreme Court of the United States."  Under the "contrary to" clause, a federal habeas court may grant the writ if the state court arrives at a conclusion opposite to that reached by this court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts.  Under the "unreasonable application" clause, a federal habeas court may grant the writ if the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case.

---

[2] Unless otherwise noted, references to <u>Williams</u> are to the majority holding, written by Justice Stevens for the Court (joined by Justices O'Connor, Kennedy, Souter, Ginsburg, and Breyer) in parts I, III, and IV of the opinion (529 U.S. at 367–75, 390–99); and Justice O'Connor for the Court (joined by Justices Rehnquist, Kennedy, Thomas, and—except as to the footnote—Scalia) in part II (529 U.S. at 403–13).  The opinion of Justice Stevens in Part II was joined by Justices Souter, Ginsburg, and Breyer.

*Id.*, 529 U.S. at 412–13 (O'Connor, J., concurring); Ramdass v. Angelone, 530 U.S. 156, 120 S. Ct. 2113, 2119–20, 147 L. Ed. 2d 125 (2000).  In employing this test, the Supreme Court has instructed that on any issue raised in a federal habeas petition upon which there has been an adjudication on the merits in a formal State court proceeding, the federal court should first ascertain the "clearly established Federal law," namely, "the governing legal principle or principles set forth by the Supreme Court at the time the state court render[ed] its decision."  Lockyer v. Andrade, 538 U.S. 63, 71–72, 123 S. Ct. 1166, 155 L. Ed. 2d 144 (2003).  The law is "clearly established" if Supreme Court precedent at the time "would have compelled a particular result in the case."  Neelley v. Nagle, 138 F.3d 917, 923 (11th Cir. 1998), *overruled on other grounds by* Parker v. Head, 244 F.3d 813, 835 (11th Cir. 2001).

Next, the court must determine whether the State court adjudication is contrary to the clearly established Supreme Court case law, either because "'the state court applies a rule that contradicts the governing law set forth in [the Supreme Court's] cases' or because 'the state court confronts a set of facts that are materially indistinguishable from a decision of th[e] [Supreme] Court and nevertheless arrives at a result different from [Supreme Court] precedent.'"  Lockyer, 538 U.S. at 73 (quoting Williams, 529 U.S. at 405–06).  The Supreme Court has clarified that "[a]voiding these pitfalls does not require citation to our cases—indeed, it does not even require awareness of our cases, so long as neither the reasoning nor the result of the state-court decision contradicts them."  Early v. Packer, 537 U.S. 3, 8, 123 S. Ct. 362, 365, 154 L. Ed. 2d 263 (2002) (quoting Williams, 529 U.S. at 405–06).  If the State court decision is found in either respect to be contrary, the district court must independently consider the merits of the petitioner's claim.  Moreover, where there is no Supreme Court precedent on point, the state court's conclusion cannot be contrary to clearly established federal law.  *See* Henderson v. Campbell, 353 F.3d 880, 890 n. 15 (11th Cir. 2003).

If on the other hand, the State court applied the correct Supreme Court precedent and the facts of the Supreme Court cases and the petitioner's case are not materially indistinguishable, the court must go to the third step and determine whether the State court "unreasonably applied" the governing legal principles set forth in the Supreme Court's cases.  The standard for an unreasonable application inquiry is "whether the state court's application of clearly established federal law was objectively unreasonable."  Williams, 529 U.S. at 409.  Whether a State court's decision was an

unreasonable application of a legal principle must be assessed in light of the record the court had before it.  Holland v. Jackson, 542 U.S. 649, 652, 124 S. Ct. 2736, 2737–38, 159 L. Ed. 2d 683 (2004) (per curiam); *cf.* Bell v. Cone, 535 U.S. 685, 697 n.4, 122 S. Ct. 1843, 1851 n.4, 152 L. Ed. 2d 914 (2002) (declining to consider evidence not presented to state court in determining whether its decision was contrary to federal law).  An objectively unreasonable application of federal law occurs when the State court "identifies the correct legal rule from Supreme Court case law but unreasonably applies that rule to the facts of the petitioner's case" or "unreasonably extends, or unreasonably declines to extend, a legal principle from Supreme Court case law to a new context." Putman v. Head, 268 F.3d 1223, 1241 (11th Cir. 2001).  "In determining whether a state court's decision represents an unreasonable application of clearly established federal law, a federal court conducting habeas review 'may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly.  Rather, that application must also be unreasonable.'" Gill v. Mecusker, 633 F.3d 1272, 1287 (11th Cir. 2011) (quoting Williams, 529 U.S. at 411) (citing Harrington v. Richter, 562 U.S. 86, 103, 131 S. Ct. 770, 178 L. Ed. 2d 624 (2011)).  The AEDPA's "unreasonable application" standard focuses on the state court's ultimate conclusion, not the reasoning that led to it.  *See* Gill, *supra* at 1291 (citing Harrington).  Under § 2254(d), a habeas court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court.  *See* Harrington, 562 U.S. at 102; *see also* Gill, *supra,* at 1292 (the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

Section 2254(d) also allows federal habeas relief for a claim adjudicated on the merits in State court where that adjudication "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding."  28 U.S.C. § 2254(d)(2).  The Supreme Court has clarified that: "a decision adjudicated on the merits

in a state court and based on a factual determination will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." Miller-El v. Cockrell, 537 U.S. 322, 340, 123 S. Ct. 1029, 1041, 154 L. Ed. 2d 931 (2003) (dictum).

When performing its review under § 2254(d), the federal court must bear in mind that any "determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner bears "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); see e.g., Miller-El, 537 U.S. at 340 (explaining that a federal court can disagree with a state court's factual finding and, when guided by AEDPA, "conclude the decision was unreasonable or that the factual premise was incorrect by clear and convincing evidence"); Jones v. Walker, 469 F.3d 1216, 1226–27 (11th Cir. 2007) (holding that § 2254(d)(2)'s "unreasonable determination" standard "must be met by clear and convincing evidence," and concluding that that standard was satisfied where prisoner showed "clearly and convincingly" that the state court's decision "contain[ed] an 'unreasonable determination' of fact."). The "unreasonable determination of the facts" standard is only implicated to the extent that the validity of the state court's ultimate conclusion is premised on unreasonable fact finding. See Gill, 633 F.3d at 1292. A petitioner is not entitled to relief unless he demonstrates by clear and convincing evidence that the record reflects an insufficient factual basis for affirming the state court's decision. Id.

Only if the federal habeas court finds that the petitioner satisfied AEDPA, and § 2254(d), does the court take the final step of conducting an independent review of the merits of the petitioner's claims. See Panetti v. Quarterman, 531 U.S. 930, 953, 127 S. Ct. 2842, 2858, 168 L. Ed. 2d 662 (2007); Jones, 469 F.3d 1216 (same). The writ will not issue unless the petitioner shows that he is in custody "in violation of the Constitution or laws and treaties of the United States." 28 U.S.C. § 2254(a).

III.    EXHAUSTION AND PROCEDURAL DEFAULT

It is a long-standing prerequisite to the filing of a federal habeas corpus petition that the petitioner have exhausted available state court remedies, see 28 U.S.C. § 2254(b)(1), thereby giving the State the "'opportunity to pass upon and correct' alleged violations of its prisoners' federal rights." Duncan v. Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 888, 130 L. Ed. 2d 865 (1995)

(quoting Picard v. Connor, 404 U.S. 270, 275, 92 S. Ct. 509, 30 L. Ed. 2d 438 (1971) (citation omitted)).  To satisfy the exhaustion requirement, the petitioner must "fairly present" his claim in each appropriate state court, alerting that court to the federal nature of the claim.  Duncan, 513 U.S. at 365–66; O'Sullivan v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144 L. Ed. 2d 1 (1999); Picard, 404 U.S. at 277–78.

The Supreme Court has provided lower courts with guidance for determining whether a habeas petitioner has met the "fair presentation" requirement.  In Picard v. Connor, the Court held that, for purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief.  404 U.S. at 277.  In announcing that "the substance of a federal habeas corpus claim must first be presented to the state courts," id., 404 U.S. at 278, the Court rejected the contention in that case that the petitioner satisfied the exhaustion requirement by presenting the state courts only with the facts necessary to state a claim for relief.

Additionally, the Court has indicated that it is not enough that a petitioner make a general appeal to a constitutional guarantee as broad as due process to present the "substance" of such a claim to a state court.  Anderson v. Harless, 459 U.S. 4, 103 S. Ct. 276, 74 L. Ed. 2d 3 (1982).  In Anderson, the habeas petitioner was granted relief by the Sixth Circuit Court of Appeals on the ground that a jury instruction violated due process because it obviated the requirement that the prosecutor prove all the elements of the crime beyond a reasonable doubt.  459 U.S. at 7 (citing Sandstrom v. Montana, 442 U.S. 510, 99 S. Ct. 2450, 61 L. Ed. 2d 39 (1979)).  The only manner in which the habeas petitioner cited federal authority was by referring to a state court decision in which "the defendant . . . asserted a broad federal due process right to jury instructions that properly explain state law."  Anderson, 459 U.S. at 7 (internal quotation marks omitted).  The Court expressed doubt that a defendant's citation to a state-court decision predicated solely on state law was sufficient to fairly apprise a reviewing court of a potential federal claim merely because the defendant in the cited case advanced a federal claim.  Id., 459 U.S. at 7 and n.3.  Furthermore, the Court clarified that such a citation was obviously insufficient when the record satisfied the federal habeas court that the federal claim asserted in the cited case was not the same as the federal claim on which federal habeas relief was sought.  Id.

Years later, the Supreme Court readdressed the "fair presentation" requirement in Duncan v. Henry, 513 U.S. 364.  The Duncan Court strictly construed the exhaustion requirement so as to mandate that, if state and federal constitutional law overlap in their applicability to a petitioner's claim, the petitioner must raise his issue in terms of the applicable federal right in state court in order to obtain federal review of the issue.[3]  The Supreme Court explained, "[i]f a habeas petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court."  Duncan, 513 U.S. at 365–66.  More recently, the Supreme Court again focused upon the requirement of "fair presentation," holding that "ordinarily a state prisoner does not 'fairly present' a claim to a state court if that court must read beyond a petition or a brief (or a similar document) that does not alert it to the presence of a federal claim in order to find material, such as a lower court opinion in the case, that does so."  Baldwin v. Reese, 541 U.S. 27, 124 S. Ct. 1347, 1351, 158 L. Ed. 2d 64 (2004).  In Baldwin, the Supreme Court recognized that "[a] litigant wishing to raise a federal issue can easily indicate the federal law basis for his claim in a state-court petition or brief, for example, by citing in conjunction with the claim the federal source of law on which he relies or a case deciding such a claim on federal grounds, or by simply labeling the claim 'federal.'"  Id., 541 U.S. at 32.  This language, while not part of the Court's holding, provides helpful instruction.  With regard to this language, the Eleventh Circuit explained in McNair v. Campbell, 416 F.3d 1291 (11th Cir. 2005):

> If read in a vacuum, this dicta might be thought to create a low floor indeed for petitioners seeking to establish exhaustion.  However, we agree with the district court that this language must be "applied with common sense and in light of the purpose underlying the exhaustion requirement[:] 'to afford the state courts a meaningful opportunity to consider allegations of legal error without interference from the federal judiciary.'"  McNair [v. Campbell], 315 F. Supp. 2d at 1184 (quoting Vasquez v. Hillery, 474 U.S. 254, 257, 106 S. Ct. 617, 620, 88 L. Ed. 2d 598 (1986)).  This is consistent with settled law established by the Supreme Court. . . . We therefore hold that "'[t]he exhaustion doctrine requires a habeas applicant to do more than scatter some makeshift needles in the haystack of the state court record.'"

---

[3] The petitioner in Duncan raised a federal due process claim in his habeas petition, but had raised only a state constitutional claim in his state appeal.  Presented with a state constitutional claim, the state court applied state law in resolving the appeal.  513 U.S. at 366.

416 F.3d at 1302–03 (citations omitted).[4]

The Eleventh Circuit, prior to <u>Duncan</u>, had broadly interpreted the "fair presentation" requirement.  After <u>Duncan</u>, however, the Eleventh Circuit has taken a more narrow approach.  For example, in <u>Zeigler v. Crosby</u>, the court held that the habeas petitioner failed to "fairly present" his juror misconduct claims to the state courts where his brief to the state appellate court did not refer to the federal constitutional issues raised in his federal habeas petition, and none of the cases cited in his direct appeal discussed the United States Constitution.  345 F.3d 1300, 1307 (11th Cir. 2003).  The Eleventh Circuit specifically noted that the section of the petitioner's appellate brief which dealt with juror misconduct contained the words:  "Appellant was denied due process and a fair trial. . . .," which could be interpreted as asserting a fair trial claim under the Due Process Clause of the Florida Constitution.  *Id.* at 1308 n.5.  The only cases cited in the discussion of the issue in petitioner's state appellate brief were state supreme court cases that made no mention of the United States Constitution and cited no federal cases.  The court concluded that petitioner's "[c]ursory and conclusional sentence (unaccompanied by citations to federal law), . . . did not present to the Florida courts the federal claim asserted to us."  *Id.*

An issue that was not properly presented to the state court and which can no longer be litigated under state procedural rules is considered procedurally defaulted, that is, procedurally barred from federal review.  *See* <u>O'Sullivan</u>, 526 U.S. at 839–40, 848; <u>Bailey v. Nagle</u>, 172 F.3d 1299, 1302–03 (11th Cir. 1999).  This court will also consider a claim procedurally defaulted if it was presented in state court and rejected on the independent and adequate state ground of procedural bar or default.  *See* <u>Coleman v. Thompson</u>, 501 U.S. 722, 734–35 and n.1, 111 S. Ct. 2546, 2555 and n.1, 115 L. Ed. 2d 640 (1991); <u>Caniff v. Moore</u>, 269 F.3d 1245, 1247 (11th Cir. 2001) ("[C]laims that have been held to be procedurally defaulted under state law cannot be addressed by federal courts."); <u>Chambers v. Thompson</u>, 150 F.3d 1324, 1326–27 (11th Cir. 1998) (applicable state

---

[4] In his initial brief before the Court of Criminal Appeals, McNair cited one federal case in a string citation containing other state cases, and in a closing paragraph in his argument that extraneous materials were considered by the jury during deliberations, stated that there was a violation of his rights "protected by the Fifth, Sixth, Eighth[,] and Fourteenth Amendments to the United States Constitution, the Alabama Constitution[,] and Alabama law."  <u>McNair v. Campbell</u>, 416 F.3d 1291, 1303 (11th Cir. 2005).  The court found that these references to federal law were not sufficient to meet the fair presentment requirement and noted that it was important that the petitioner had never mentioned the federal standards regarding extraneous materials in his brief, but relied on state law for his arguments.  *Id.*

procedural bar should be enforced by federal court even as to a claim which has never been presented to a state court); *accord* Tower v. Phillips, 7 F.3d 206, 210 (11th Cir. 1993); Parker v. Dugger, 876 F.2d 1470 (11th Cir. 1990), *rev'd on other grounds*, 498 U.S. 308, 111 S. Ct. 731, 112 L. Ed. 2d 812 (1991).  In the first instance, the federal court must determine whether any future attempt to exhaust state remedies would be futile under the state's procedural default doctrine. Bailey, 172 F.3d at 1303.  In the second instance, a federal court must determine whether the state's procedural default ruling rested on adequate state grounds independent of the federal question.  *See* Harris v. Reed, 489 U.S. 255, 109 S. Ct. 1038, 1043, 103 L. Ed. 2d 308 (1989).  The adequacy of a state procedural bar to the assertion of a federal question is itself a federal question.  Lee v. Kemna, 534 U.S. 362, 122 S. Ct. 877, 885, 151 L. Ed. 2d 820 (2002).  The adequacy requirement has been interpreted to mean that the rule must be "firmly established and regularly followed," Siebert v. Allen, 455 F.3d 1269, 1271 (11th Cir. 2006), that is, not applied in an "arbitrary or unprecedented fashion," Judd v. Haley, 250 F.3d 1308,1313 (11th Cir. 2001), or in a manifestly unfair manner.  Ford v. Georgia, 498 U.S. 411, 424–25, 111 S. Ct. 850, 858, 112 L. Ed. 2d 935 (1991); Upshaw v. Singletary, 70 F.3d 576, 579 (11th Cir. 1995).

The Eleventh Circuit has set forth a three-part test to determine whether a state court's procedural ruling constitutes an independent and adequate state rule of decision.  Judd v. Haley, 250 F.3d 1308, 1313 (11th Cir. 2001).  First, the last state court rendering judgment must clearly and expressly state it is relying on state procedural rules to resolve the federal claim.[5]  Second, the state court's decision on the procedural issue must rest entirely on state law grounds and not be intertwined with an interpretation of federal law.  Third, the state procedural rule must be adequate. *Id.*  The adequacy requirement has been interpreted to mean the rule must be firmly established and regularly followed, that is, not applied in an arbitrary or unprecedented fashion.  *Id.*

To overcome a procedural default such that the federal habeas court may consider the merits of a claim, the petitioner must show cause for the default and prejudice resulting therefrom or a fundamental miscarriage of justice.  Tower, 7 F.3d at 210; Parker, 876 F.2d 1470.  "For cause to

---

[5] The federal court should honor the procedural bar even if the state court alternatively reviewed the claim on the merits.  Marek v. Singletary, 62 F.3d 1295, 1302 (11th Cir. 1995); Alderman v. Zant, 22 F.3d 1541, 1549 (11th Cir. 1994).

exist, an external impediment, whether it be governmental interference or the reasonable unavailability of the factual basis for the claim, must have prevented petitioner from raising the claim." McCleskey v. Zant, 499 U.S. 467, 497, 111 S. Ct. 1454, 1472, 113 L. Ed. 2d 517 (1991) (quoting Murray v. Carrier, 477 U.S. 478, 488, 106 S. Ct. 2639, 2645, 91 L. Ed. 2d 397 (1986)). To satisfy the miscarriage of justice exception, the petitioner must show that "a constitutional violation has probably resulted in the conviction of one who is actually innocent." Schlup v. Delo, 513 U.S. 298, 327, 115 S. Ct. 85, 130 L. Ed. 2d 808 (1995). "To establish the requisite probability, the petitioner must show that it is more likely than not that no reasonable juror would have convicted him." Schlup, 513 U.S. at 327. Further:

> a substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare. To be credible, such a claim requires [a] petitioner to support his allegations of constitutional error with new reliable evidence—whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence—that was not presented at trial.

Id. Although a habeas petitioner asserting a convincing claim of actual innocence need not prove diligence to overcome a procedural bar, timing is a factor relevant in evaluating the reliability of a petitioner's proof of innocence. See McQuiggin v. Perkins, — U.S. —, 133 S. Ct. 1924, 1935, 185 L. Ed. 2d 1019 (2013). As the Court stated in Schlup, "[a] court may consider how the timing of the submission and the likely credibility of [a petitioner's] affiants bear on the probable reliability of . . . evidence [of actual innocence]." 513 U.S. at 332; see also House, 547 U.S. at 537.

Within this framework, the court will review Petitioner's claims.

IV.    PETITIONER'S CLAIMS

A.    Ground One: "Trial court erred in limiting the cross-examination of Mr. Taylor, the alleged victim."

Petitioner alleges the victim, Mr. Taylor, had a long-standing dislike of him, and the two of them had several confrontations over the years (doc. 1 at 5–6).[6] He alleges Mr. Taylor denied this during his trial testimony and stated there had never been a problem between them (id. at 5). Petitioner alleges Mr. Taylor testified that he believed Petitioner had entered his property more than

---

[6] The page references used in this Report reflect the page numbers as enumerated in the court's electronic docketing system rather than those the parties may have assigned.

once and stolen items from him, but he had no direct knowledge of this (*id.*).  Petitioner alleges Mr. Taylor testified that he never reported Petitioner to the police, because it was inconvenient (*id.*).  Petitioner alleges defense counsel attempted to impeach Mr. Taylor's credibility by showing he was lying about the reason he did not call police, and that the true reason he did not call police was that he was growing marijuana in his back yard (*id.*).  Petitioner alleges the trial court sustained the prosecutor's objection to this line of questioning, thus preventing defense counsel from cross-examining Taylor about the reason he did not call police (*id.*).  Petitioner contends the trial court's ruling interfered with his constitutional right to inquire into matters concerning Mr. Taylor's truthfulness, and his constitutional right to confront his accuser.  Petitioner argues defense counsel's question was relevant to Mr. Taylor's direct testimony and "plausibly relevant" to the defense (*id.* at 6).  He contends the trial court's limiting cross-examination violated his due process rights under the Fourteenth Amendment (*id.*).  Petitioner asserts he raised this issue on direct appeal (*id.*).

Respondent construes Petitioner's claim as asserting both a due process claim under the Fourteenth Amendment and a Confrontation Clause claim under the Sixth Amendment (doc. 27 at 4–11).  Respondent argues Petitioner failed to fairly present a federal due process claim to the state court on direct appeal and is now procedurally barred from doing so; therefore, the claim is procedurally defaulted (*id.*).  Respondent asserts the same exhaustion argument with respect to Petitioner's Confrontation Clause claim (*see id.* at 11–15).  Respondent further argues that if this court disagrees that an exhaustion defense applies to that claim, then the state court's decision is an adjudication on the merits of the Confrontation Clause claim, and it is entitled to deference (*id.* at 15–20).

Petitioner did not file a reply or otherwise respond to Respondent's exhaustion argument.

The record shows that on direct appeal, Petitioner argued in Issue One that the trial court's limiting defense counsel's cross-examination of Mr. Taylor unlawfully deprived him of the opportunity to fully and fairly test the victim's truthfulness and his version of the event (Ex. L at 8–13).  He argued that the limitation on cross-examination constituted an abuse of discretion under Florida law and violated his Sixth Amendment right to confront his accusers (*id.*).  Petitioner cited <u>Davis v. Alaska</u>, 415 U.S. 308 (1974) and the Confrontation Clause of the Sixth Amendment (*id.*

at 9, 12). The undersigned concludes that this was sufficient to alert the First DCA that Petitioner was claiming that the trial court's evidentiary ruling denied him his federal right to confront his accuser and thus satisfied the "fair presentation" requirement of § 2254. *See* Taylor v. Sec'y, Fla. Dep't of Corr., 760 F.3d 1284, 1295 (11th Cir. 2014) (holding that petitioner fairly presented a federal due process claim concerning the trial court's exclusion of testimony from defense witnesses, where petitioner averred in his initial brief on direct appeal in state court that the trial court's evidentiary ruling violated his Sixth Amendment, and he twice cited Chambers v. Mississippi, 410 U.S. 284 (1973)).

       1.       Clearly Established Federal Law

"[T]he Constitution guarantees criminal defendants a meaningful opportunity to present a complete defense." Crane v. Kentucky, 476 U.S. 683, 690, 106 S. Ct. 2142, 90 L. Ed. 2d 636 (1986). "The right of an accused in a criminal trial to due process is, in essence, the right to a fair opportunity to defend against the State's accusations." Chambers, 410 U.S. 284, 294. The right to confront and cross-examine witnesses is essential to due process. *Id.* The right of cross-examination is implicit in the constitutional right of confrontation. *Id.* at 295. The principal protection derived from the Sixth Amendment's confrontation right is the right to effective cross-examination of the State's witnesses.[7] *See* Crawford v. Washington, 541 U.S. 36, 61, 124 S. Ct. 1354, 158 L. Ed. 2d 177 (2004); United States v. Owens, 484 U.S. 554, 559, 108 S. Ct. 838, 98 L. Ed. 2d 951 (1988); Delaware v. Van Arsdall, 475 U.S. 673, 678, 106 S. Ct. 1431, 89 L. Ed. 2d 674 (1986). Through effective cross-examination, the criminal defendant hopes to demonstrate to the jury of his peers why it should not believe this particular witness. *See* Van Arsdall, 475 U.S. at 680. Effective cross-examination is therefore not limited merely to testimonial inconsistencies, but also the witness's "biases, prejudices or ulterior motives." Davis, 415 U.S. at 316. However, "the Confrontation Clause guarantees only 'an *opportunity* for effective cross-examination, not cross-examination that is effective whatever way, and to whatever extent, the defense might wish.'"

---

[7] The Sixth Amendment guarantees an accused the right "to be confronted with the witnesses against him . . . ." U.S. Const. amend. VI. The Clause is applicable to the States through the Fourteenth Amendment's Due Process Clause. *See* Pointer v. Texas, 380 U.S. 400, 403, 85 S. Ct. 1065, 13 L. Ed. 2d 923 (1965).

Owens, 484 U.S. at 559 (emphasis in original) (quoting Kentucky v. Stincer, 482 U.S. 730, 739, 107 S. Ct. 2658, 96 L. Ed. 2d 631 (1987)).

A Confrontation Clause violation arises when a criminal defendant shows "that he was prohibited from engaging in otherwise appropriate cross-examination designed to show a prototypical form of bias on the part of the witness, and thereby 'to expose to the jury the facts from which jurors . . . could appropriately draw inferences relating to the reliability of the witness.'" Van Arsdall, 475 U.S. at 680 (quoting Davis, 415 U.S. at 318).  Conversely, a Confrontation Clause violation does not arise, even where the defendant's cross-examination of a witness has been limited, when:  "(1) the jury, through the cross-examination permitted, was exposed to facts sufficient for it to draw inferences relating to the reliability of the witness; and (2) the cross-examination conducted by defense counsel enabled him to make a record from which he could argue why the witness might have been biased."  United States v. Calle, 822 F.2d 1016, 1020 (11th Cir. 1987).  Further, the Supreme Court has never held that the Confrontation Clause entitles a criminal defendant to introduce evidence on a collateral matter or extrinsic evidence for impeachment purposes.  See Nevada v. Jackson, 133 S.Ct. 1990, 186 L. Ed. 2d 62 (2012) (citing Delaware v. Fensterer, 474 U.S. 15, 22, 106 S. Ct. 292, 88 L. Ed. 2d 15 (1985) (observing that "the Confrontation Clause is generally satisfied when the defense is given a full and fair opportunity to . . . expose [testimonial] infirmities through cross-examination").

2.      Federal Review of State Court Decision

Petitioner was accused of burglary of a conveyance with battery (Ex. B).  The prosecution presented evidence that on November 5, 2009, Jerry Taylor, the victim, saw Petitioner enter his (Taylor's) truck with the intent to steal something, and in the course of doing so, he "charged" Mr. Taylor, knocking him to the ground (Ex. D at 33–44, 70–87).  As evidenced by defense counsel's opening statement, the theory of defense was that Mr. Taylor's allegations were fabricated, borne of Taylor's unverified belief that Petitioner had stolen from him in the past, with his long-standing animus toward Petitioner illustrated by a pattern of unprovoked threats and aggression (id. at 19–32).

The State presented testimony from Mr. Taylor that on November 5, 2009, he was watching television when his dog began barking outside (Ex. D at 36).  Taylor testified he looked outside and saw Petitioner "coming down the road" (id.).  Taylor testified he brought the dog in the house and

resumed watching television (*id.* at 36–37).  He testified that his dog again started barking, so he grabbed a baseball bat and walked in the yard toward his truck (*id.* at 37).  Mr. Taylor testified he saw Petitioner leaning into his truck through the passenger side door (*id.* 37–44).  He testified he approached Petitioner by walking around the back of the truck to the passenger side, and Petitioner ran at him "like a running back" and knocked him to the ground with his shoulder (*id.*).  Mr. Taylor testified Petitioner then ran across the road through a church yard, and in the course of doing so, he dropped a two-liter bottle he was holding (*id.* at 37–44).

On cross-examination Mr. Taylor, denied that he and Petitioner had ever had a confrontation (*id.* at 46).  Defense counsel asked Mr. Taylor whether he had ever raised or shaken a bat at Petitioner or at Petitioner and his sister, or whether Taylor had ever shown a bat to Petitioner and his sister as they went by his house, and Taylor stated no (*id.*).  Defense counsel then questioned Mr. Taylor as to whether, approximately one month prior to the alleged burglary, he had confronted Petitioner and yelled at him while holding a "tire jack or tire tool" outside the Magic Mart store (*id.* at 51, 55).  Mr. Taylor denied that this happened (*id.* at 51–52, 55).  Defense counsel asked Mr. Taylor whether he recalled driving his truck at Petitioner and Petitioner's brother when they were walking together down the road approximately ten years prior, and Mr. Taylor responded no (*id.* at 56).  Defense counsel asked Mr. Taylor whether he remembered firing a pistol in the air near Petitioner's grandfather's house while threatening to shoot Petitioner and his brothers if he saw them on his property, and Mr. Taylor denied that he did that (*id.* at 59–60).

In response to other questions of defense counsel, Mr. Taylor testified that at the time of the offense (November 5, 2009), he believed that Petitioner had previously stolen items from him, including a pistol and some change (Ex. D at 57).  Mr. Taylor admitted that his belief was not based upon firsthand knowledge, but upon what other people said (*id.* at 57).  Mr. Taylor testified that on one occasion, "back in the 90's," he drove up to his trailer and saw Petitioner exiting his shed "poking something in his jacket" (*id.* at 58).  Defense counsel asked Mr. Taylor whether he called the police after he saw Petitioner exiting his shed, or after he heard from others that Petitioner had stolen from him, and Taylor responded no (*id.* at 57–59).  Defense counsel asked Mr. Taylor why he did not notify the police, and Taylor responded that he was a truck driver at the time, and did not have time to report it (*id.* at 59).  Defense counsel then asked:

Q.      Mr. Taylor, is there something in the woods right behind your trailer that you're concerned about the police finding if you were to call the police back in the '90's?

A.      No, sir.

Q.      You're sure about that?

A.      There is a house back there, people living there then.

Q.      But it is kind of dense vegetation, you could have something going on back there—

THE COURT:  Sidebar.

MR. MANN [defense counsel]:  —that you couldn't see from the road, is that true?

THE COURT:  Sidebar.

MR. MANN:  I'll withdraw the question.

MR. FAUCHEUX [the prosecutor]:  No, I think we need a sidebar.

THE COURT:  Fritz [defense counsel]—

MR. MANN:  He was on felony probation for possession.

MR. FAUCHEUX:  Adjudication was withheld.

MR. MANN:  He was growing pot.

THE COURT:  You don't know that.

MR. MANN:  He came down there—

THE COURT:  Listen to me.  You're off track.

MR. MANN:  No, sir.

THE COURT:  I'm telling you, you will not inquire of that area.  That has nothing to do with this case and you can't tie it into bias.  So you take your stand over there and continue your examination.  You stay away from that before you cause a mistrial.

> MR. MANN:  Judge, would you note my objection.  It goes to motive, goes to his motive to fabricate.

(Ex. D at 60–61).

Defense counsel continued cross-examination by asking Mr. Taylor whether he remembered having another confrontation with Petitioner, other than the Magic Mart incident, when Petitioner and his brother were fishing, and Taylor fired shots in the air where they were fishing (Ex. D at 61–62).  Mr. Taylor denied that it happened (*id.* at 62).

The prosecutor called one other witness, Deputy Kate Lilley (Ex. D at 70–87).  She testified that she responded to Mr. Taylor's call to police on November 5, 2009 (*id.* at 70–71).  She testified she interviewed Mr. Taylor, and observed some physical evidence consistent with Mr. Taylor's description of his encounter with Petitioner (*id.* at 72–78).[8]  Deputy Lilley testified she processed the outside of the truck and the two-liter bottle for fingerprints but was unable to obtain any prints of value (*id.* at 72–73, 78).  Deputy Lilley testified she interviewed Petitioner, and he told her that he and Mr. Taylor had problems "for years and years" (*id.* at 80).  Petitioner told Deputy Lilley that he was going to the convenience store when he saw Mr. Taylor standing in the middle of the road with a baseball bat (*id.*).  Petitioner told Deputy Lilley that Mr. Taylor inexplicably began running down the street after him, screaming (*id.*).  He told Lilley that he continued to the store, bought cigarettes, and then went home (*id.*).  Deputy Lilley testified that Petitioner then changed his story and said he had already been to the store and was coming home when Mr. Taylor chased him (*id.*).  She testified Petitioner told her that Mr. Taylor chased him down the street and across the ditch, and then jumped in the ditch after him (*id.*).  Petitioner told Lilley that his pants fell down, and he had to drop the soda bottle he was carrying to pull them up (*id.* at 80–82).

---

[8] For example, Deputy Lilley testified she observed some bruising across the back knuckle of one of Mr. Taylor's hands, which Taylor attributed to Petitioner's knocking him to the ground (Ex. D at 72).  Deputy Lilley also observed dust and debris on the side of Taylor's pant leg, which was consistent with the manner in which he described he fell (*id.*).  Deputy Lilley testified that on the passenger side of Mr. Taylor's truck, she observed an area where dust and debris had been brushed off, which was consistent with someone brushing up against it in the manner Mr. Taylor described when he said he fled from Petitioner (*id.* at 72–73).  She testified she observed the outline of four fingers on the truck, consistent with someone opening the vehicle's door (*id.* at 73).  Deputy Lilley also observed that the passenger door was slightly ajar (*id.*).  She testified that the groundcover near the truck was displaced in a manner consistent with a scuffle (*id.* at 74).  Lilley testified she collected a two-liter bottle from the church yard across the street (*see id.* at 40–42).

After the State rested, defense counsel presented testimony from Petitioner's sister, Heather Robinson (Ex. D at 117–23).  She testified that after Petitioner was charged with the crime, she and Petitioner drove past Mr. Taylor's house en route to a convenience store, and she saw Mr. Taylor standing in his driveway shaking a baseball bat at them (*id.*).  She testified that 12–13 years prior (in the late 90's), she, Petitioner, and her other brother Michael were in her uncle's yard across from their grandfather's house, when Mr. Taylor came into the yard, got out of his truck and argued with Michael (*id.*).  Ms. Robinson testified that Mr. Taylor then got back into his truck, retrieved a gun, and shot it in the air (*id.*).

Defense counsel presented testimony from Shannon Mitchell, a crime scene investigator (Ex. D at 126–30).  She testified that she examined fingerprint evidence collected by Deputy Lilley, and none of it had any value for purposes of comparison and/or identification (*id.*).

Ms. Rena Boggess testified that she lived in the same neighborhood as Petitioner, and they were friends (Ex. D at 132–35).  She testified that on November 5, 2009, Petitioner did yard work for her and left in the late afternoon (*id.*).  She testified he mentioned he had to go to the convenience store to get cigarettes (*id.*).  On cross-examination by the prosecutor, Ms. Boggess testified she was unaware of any incidents involving yelling, arguing, or confrontations between Petitioner and Mr. Taylor (*id.*).

The defense's final witness was Rhonda Draves, a clerk at the Magic Mart store (Ex. D at 137–42).  She testified that Petitioner came to the store at least once a day for the past two years (*id.*).  Ms. Draves testified that in October of 2009, the month prior to the incident, she heard yelling outside the store and saw Petitioner and Mr. Taylor yelling at each other (*id.*).  She testified she ran outside and told them she was calling the police (*id.*).  She testified that Mr. Taylor may have had something "like one of those tire bats" in his hand, but she was not certain (*id.*).  She testified the two men left after she threatened to call police (*id.*).

As previously discussed, Petitioner argued on direct appeal that the trial court's limiting defense counsel's cross-examination of the victim unlawfully deprived him of the opportunity to fully and fairly test the victim's truthfulness and his version of the event (Ex. L at 8–13).  The First DCA affirmed the judgment without written opinion (Ex. O).

"[T]he summary nature of a state court's decision does not lessen the deference that it is due."  Wright v. Moore, 278 F.3d 1245, 1254 (11th Cir. 2002); *see also* Harrington, 131 S. Ct. at 784–85 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").  Where a state court denies relief without providing an explanation or its reasoning, the habeas petitioner must show that there was no reasonable basis for the state court's decision.  *See* Harrington, 131 S. Ct. at 784.  The federal court must determine what arguments or theories supported or could have supported the state court's decision, and then ask whether it is possible that fairminded jurists could disagree that those arguments or theories are inconsistent with the holding in a prior decision of the Supreme Court. *See* Harrington, 131 S.Ct. at 786; *see also* Gill, 633 F.3d at 1292 (holding that the federal district court may rely on grounds other than those articulated by the state court in determining that habeas relief was not warranted, so long as the district court did not err in concluding that the state court's rejection of the petitioner's claims was neither an unreasonable application of a Supreme Court holding nor an unreasonable determination of the facts).

The First DCA's rejection of Petitioner's federal claim could have been based upon the theory that the jury would not have received a significantly different impression of Mr. Taylor's credibility by allowing defense counsel to question him as to the reason he did not notify police when he believed that Petitioner had previously entered his property and stolen items.  Mr. Taylor's motive for not calling the police about the prior incidents was not probative of whether he had an ulterior motive for testifying as he did with regard to the incident at issue in the present case.  Defense counsel was attempting to elicit testimony on a collateral matter, and, as previously discussed, the Supreme Court has never held that the Confrontation Clause entitles a criminal defendant to introduce evidence on a collateral matter.  *See* Jackson, 133 S. Ct. at 1990.  The jury, through the cross-examination permitted by the trial court as well as through the testimony of defense witnesses, was exposed to facts sufficient to draw inferences relating to Mr. Taylor's credibility.

Petitioner failed to demonstrate that the First DCA's rejection of Ground One was contrary to or an unreasonable application of clearly established federal law.  Therefore, he is not entitled to federal habeas relief on this claim.

      B.    <u>Ground Two:  "Trial court erred in overruling the defense objection to the prosecutor's improper closing argument."</u>

Petitioner asserts the trial court erred by overruling defense counsel's objections to two comments by the prosecutor during closing argument (doc. 1 at 7).  The first comment was:

> We also know that he [Petitioner] had been caught coming out of Mr. Taylor's shed. Police weren't called.  Couldn't prove that anything was taken.  And then when he was long haul trucking he had a couple of burglaries in his house, some change was taken.  There was neighborhood scuttlebutt but no proof.  A revolver he had was taken.  And he got it back from the guy who got it from the defendant.

(*see* doc. 1 at 7; *see also* doc. 15, Ex. D at 172).  Petitioner contends there was no evidence that Mr. Taylor's stolen gun was returned by someone who had obtained it from Petitioner (doc. 1 at 7). Therefore, the prosecutor's argument was an improper comment on facts not in evidence.

Petitioner asserts the second improper comment was:

> I thought we were going to hear something about him [Mr. Taylor] being on neighborhood watch or something, taking his time patrolling around the streets and stuff.  Where was that?  Where was the evidence that Mr. Taylor marches up and down on the neighborhood streets waving a bat at people?

(*see* doc. 1 at 7; *see also* doc. 15, Ex. D at 186).  Petitioner contends this was an improper comment on Petitioner's right not to testify, and improperly suggested that Petitioner's failure to present evidence suggested he was guilty (doc. 1 at 7).

Petitioner claims that the trial court's overruling defense counsel's objections to these comments violated his "due process right to a fair trial" (doc. 1 at 7).  He asserts he raised this due process claim on direct appeal of his conviction (*id.*).

Respondent contends Petitioner failed to exhaust a federal claim in state court (doc. 27 at 20–23).  Respondent asserts in Issue Two of Petitioner's initial brief on direct appeal, Petitioner did not allege a violation of due process, much less a violation of due process under the Fourteenth Amendment (*id.*).  Respondent contends Petitioner now attempts to characterize his claim as federal in nature by adding the language "thus violating his due process right to a fair trial" at the conclusion

of his claim (*id.*).  However, Petitioner may not convert a state law claim of trial court error into a federal constitutional claim simply by couching it in terms of due process (*id.*).  Respondent contends Petitioner is procedurally barred from returning to state court to present his claim; therefore, it is procedurally defaulted for purposes of federal habeas (*id.*).

The state court record demonstrates that Petitioner did not exhaust a federal due process claim concerning the prosecutor's comments.  As Issue Two of his initial brief on direct appeal, Petitioner argued that the trial court erred by overruling defense counsel's objection to the two comments described *supra* (Ex. L at 14–15).  Petitioner argued that the prosecutor's comment that Mr. Taylor's stolen gun was returned to him from a man who got it from Petitioner, was improper because it was a comment on facts that were not in evidence (*id.* at 14).  Petitioner did not cite any legal authority for his argument that the comment was improper (*id.*).  As to the second comment, Petitioner argued that the prosecutor's comment about the lack of evidence that Mr. Taylor patrolled the streets waiving a bat was improper because it was a comment on Petitioner's right to remain silent (*id.* at 15).  Petitioner cited three Florida cases in support (*id.*), none of which was decided on federal grounds.  In his initial brief, Petitioner did not label his claim "federal," cite a federal source of law or a case deciding his claim on federal grounds, or otherwise indicate a federal law basis for his claim.  Petitioner did nothing to alert the First DCA that he was asserting a federal due process violation.  Therefore, he failed to satisfy the fair presentation requirement of the federal habeas statute.

Any attempt to return to state court to exhaust his federal due process claim would be futile, since the Florida procedural rules do not permit a second direct appeal.  Further, the state procedural rule which governs the collateral review process clearly states, "[t]his rule does not authorize relief on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal of the judgment and sentence."  Fla. R. Crim. P. 3.850(c); *see also* Bates v. Dugger, 604 So. 2d 457, 458 (Fla. 1992) ("Rule 3.850 does not authorize relief based upon grounds which could have been or should have been raised at trial and, if properly preserved, on direct appeal.") (quotation marks and citation omitted).  Therefore, the claim is procedurally defaulted for federal habeas purposes.  Petitioner has not alleged cause for the procedural default; nor has he shown he is entitled

to review of his due process claim through any other recognized exception to the procedural bar. Therefore, he is not entitled to federal review of Ground Two.

    C.    <u>Ground Three:  "The trial court erred in allowing the primary police officer to give her opinion about the veracity of Mr. Barry's statements."</u>

Petitioner asserts the trial court erred by overruling defense counsel's objection to Deputy Lilley's testimony that Petitioner gave inconsistent versions of the event at issue (doc. 1 at 8–9). Petitioner contends Lilley's testimony was an improper comment on Petitioner's credibility, and amounted to an opinion that he was guilty (*id.*). Petitioner states he did not raise this claim on direct appeal or in a post-conviction application (*id.* at 9–10).

Respondent contends Petitioner failed to exhaust a federal claim in state court (doc. 27 at 23–27).  Respondent asserts that in Issue Three of Petitioner's initial brief on direct appeal, Petitioner did not allege a violation of due process, much less a violation of due process under the Fourteenth Amendment, and argued his claim as purely a state law issue (*id.*).  Respondent contends Petitioner now attempts to characterize his claim as federal by adding the language "his due process were violated due to not receiving a fair and impartial trial" (*id.*).  However, Petitioner may not convert a state law claim of trial court error into a federal constitutional claim simply by couching it in terms of due process (*id.*).  Respondent contends Petitioner is procedurally barred from returning to state court to present his claim; therefore, it is procedurally defaulted for purposes of federal habeas (*id.*).

As Issue Three of Petitioner's brief on direct appeal of his conviction, he argued that the trial court erred by allowing Deputy Lilley to give her opinion about the veracity of Petitioner's statements to her, and that the error was harmful (Ex. L at 16–20).  Petitioner did not label his claim "federal" or mention his rights to due process or a fair trial.  He did not cite any federal source of law or a case deciding his claim on federal grounds.[9]  As the Supreme Court explained, "[i]f a habeas

---

    [9] One of the state cases cited by Petitioner in his appellate brief, <u>Boatwright v. State</u>, 452 So. 2d 666 (Fla. 4th DCA 1981), cited Supreme Court cases.  However, the <u>Boatwright</u> court cited those cases in deciding a claim different than Petitioner's.  The <u>Boatwright</u> court cited <u>Berger v. United States</u>, 295 U.S. 78, 55 S. Ct. 629, 79 L. Ed. 1314 (1935) and <u>Chapman v. California</u>, 386 U.S. 18, 87 S. Ct. 824, 17 L. Ed. 2d 705 (1967) in deciding a claim of whether the prosecutor's improper comment during closing argument was harmless.  452 So. 2d at 667–68.  The <u>Boatwright</u> court cited only state cases in deciding the different issue of whether the trial court erred by allowing a witness to testify as to the credibility of other witnesses.  *Id.* at 668.  The same is true of another state case cited by Petitioner, <u>Sommerville</u>

petitioner wishes to claim that an evidentiary ruling at a state court trial denied him the due process of law guaranteed by the Fourteenth Amendment, he must say so, not only in federal, but in state court." <u>Duncan</u>, 513 U.S. at 365–66. Here, Petitioner did not alert the First DCA that he was raising a federal due process claim with regard to the trial court's admission of Deputy Lilley's testimony. Therefore, he failed to fairy present his federal due process claim to the state courts.

Any attempt to return to state court to exhaust his federal due process claim would be futile, since the Florida procedural rules do not permit a second direct appeal and, as previously discussed, Rule 3.850 does not authorize relief on grounds that could have or should have been raised at trial and, if properly preserved, on direct appeal. *See* Fla. R. Crim. P. 3.850(c). Therefore, the claim is procedurally defaulted for federal habeas purposes. Petitioner has not alleged cause for the procedural default; nor has he shown he is entitled to review of his due process claim through any other recognized exception to the procedural bar. Therefore, he is not entitled to federal review of Ground Three.

     D.    <u>Ground Four</u>:  "Trial counsel was ineffective by not proffering the testimony of the victim or any additional questions he would have asked the victim if the trial judge had not limited cross-examination of the victim, thus failing to preserve this issue for appellate review violating Defendant's due process rights under Art. 1 & 9 of the Fla. Const. and his Sixth and Fourteenth Amendments [sic] under the U.S. Const."

Petitioner asserts three sub-claims in Ground Four (doc. 1 at 10–12). First, he claims defense counsel failed to preserve the issue of the trial court's limitation of cross-examination of Mr. Taylor (discussed *supra* in Ground One), because counsel failed to proffer "the testimony of the victim or any additional questions he would have asked the victim if the trial judge had not limited cross-examination of the victim." Second, Petitioner claims defense counsel failed to preserve the

---

v. State, 626 So. 2d 1070 (Fla. 1st DCA 1993). The <u>Sommerville</u> court cited Supreme Court cases, but did so in deciding a claim different than Petitioner's. 626 So. 2d at 1072.

     Petitioner also cited <u>Thomas v. State</u>, 837 So. 2d 443 (Fla. 4th DCA 2002) and <u>Sosa-Valdez v. State</u>, 785 So. 2d 633 (Fla. 3d DCA 2001) in a string citation supporting his argument that Deputy Lilley's testimony was objectionable (*see* Ex. L at 20). In both of those cases, the Florida appellate courts decided the same issue presented by Petitioner, but the courts relied upon state cases. *Id.* at 446. The only mention of a federal case was as a source cited in one of those state cases. As the Eleventh Circuit stated in <u>McNair</u>, the exhaustion doctrine requires a habeas petitioner to do more than "scatter some makeshift needles in the haystack of the state court record," *see* 416 F.3d at 1302–03, which is what Petitioner did here.

issue of the trial court's overruling counsel's objections to two of the prosecutor's comments during closing arguments (discussed *supra* in Ground Two), because counsel failed to state a legal basis for the objections (i.e., that the first comment was an improper comment on facts not in evidence, and that the second comment shifted the burden of proof to Petitioner).  Third, Petitioner claims defense counsel failed to preserve the issue of the trial court's overruling counsel's objection to Deputy Lilley's testimony regarding the credibility of Petitioner's version of events (discussed *supra* in Ground Three), because counsel failed to argue that Lilley's testimony constituted an opinion as to Petitioner's guilt.

Respondent concedes "it appears" that Petitioner satisfied the exhaustion requirement by presenting each sub-claim to the state court in his Second Amended Rule 3.850 motion (doc. 27 at 27–43).  Respondent contends the state court's adjudication of each claim was not contrary to or an unreasonable application of clearly established federal law (*id.*).

1. Clearly Established Federal Law

In Strickland v. Washington, 466 U.S. 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984), the Supreme Court set out a two-part inquiry for ineffective assistance claims.  Petitioner must show that (1) his counsel's performance was constitutionally deficient, and (2) the deficient performance prejudiced the petitioner.  *Id.*, 466 U .S. at 687.  "First, petitioner must show that 'counsel's representation fell below an objective standard of reasonableness.  Second, petitioner must show that 'there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. " Darden v. Wainwright, 477 U.S. 168, 184, 106 S. Ct. 2464, 91 L. Ed. 2d 144 (1986) (quoting Strickland, 466 U.S. at 668, 694).

Trial "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." Strickland, 466 U.S. at 690.  "To overcome that presumption, a defendant must show that counsel failed to act reasonably considering all the circumstances." Cullen v. Pinholster, — U.S. —, 131 S. Ct. 1388, 1403, 179 L. Ed. 2d 557 (2011) (quotation marks and alterations omitted).  "[T]he absence of evidence cannot overcome the strong presumption that counsel's conduct fell within the wide range of reasonable professional assistance." Burt v. Titlow, — U.S. —, 134 S. Ct. 10, 17, 187 L. Ed. 2d 348 (2013) (quotation marks and alterations omitted).

With regard to prejudice, the <u>Strickland</u> court emphasized that a defendant must show a "reasonable probability" of a different result.  A reasonable probability is one that sufficiently undermines confidence in the outcome.  466 U.S. at 694.  "The likelihood of a different result must be substantial, not just conceivable."  <u>Richter</u>, 131 S. Ct. at 792.

When a district court considers a habeas petition, the state court's findings of historical facts in the course of evaluating an ineffectiveness claim are subject to the presumption of correctness, while the performance and prejudice components are mixed questions of law and fact.  <u>Strickland</u>, 466 U.S. at 698; <u>Collier v. Turpin</u>, 177 F.3d 1184, 1197 (11th Cir. 1999).  "Surmounting's high bar is never an easy task."  <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371, 130 S. Ct. 1473, 176 L. Ed. 2d 284 (2010).  "Establishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult."  <u>Richter</u>, 131 S.Ct. at 788.  As the <u>Richter</u> Court explained:

> The standards created by <u>Strickland</u> and § 2254(d) are both "highly deferential," and when the two apply in tandem, review is "doubly" so.  The <u>Strickland</u> standard is a general one, so the range of reasonable applications is substantial.  Federal habeas courts must guard against the danger of equating unreasonableness under <u>Strickland</u> with unreasonableness under § 2254(d).  When § 2254(d) applies, the question is not whether counsel's actions were reasonable.  The question is whether there is any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard.

*Id.* (citations omitted).

2.      Federal Review of State Court Decision

a.      <u>Sub-claim A</u>

In sub-claim A, Petitioner claims that defense counsel failed to preserve the issue of the trial court's limitation of cross-examination of Mr. Taylor, because counsel failed to proffer "the testimony of the victim or any additional questions he would have asked the victim if the trial judge had not limited cross-examination of the victim."  Petitioner raised this claim as Claim #1, sub-claim A, in his Second Amended Rule 3.850 motion (Ex. T2 at 77–79). The state circuit court applied the <u>Strickland</u> standard and adjudicated the claim as follows:

**Subclaim A**

First, the Defendant alleges ineffective assistance of counsel for failing to preserve his objection to the trial court's limitation of the cross-examination of the victim.  More specifically, the Defendant argues that his attorney was ineffective for

failing to proffer testimony of the victim or any additional questions that he would have asked the victim if the Court did not prevent him from conducting a particular line of questioning.  He claims that, without a proffer, there is no way to know whether such testimony was improperly excluded.  In addition, he points out that the issue was not preserved for appellate review, and therefore it was impossible for the appellate court to determine whether the trial court's ruling was erroneous and what effect this error would have had on the result.

        The State charged the Defendant with burglary of a conveyance with a battery, based on the allegations of the victim that the Defendant was rummaging through his truck, and when confronted by the victim, the Defendant knocked the victim to the ground to get away.  (*See* Trial Tr. at 12–19.)  The Defendant's theory of defense during trial was that the victim had always had a problem with the Defendant, and this incident was actually instigated by the victim.  (Tr. at 19–32.)  The Defendant put on evidence that the victim had, on several other occasions, started altercations with the Defendant.  (Tr. at 117–26; 137–144.)  During cross-examination of the victim in this case, defense counsel attempted to elicit information regarding the victim being on felony probation for possession of marijuana by asking about whether there was "something in the woods right behind your trailer that you're concerned about the police finding . . . ." (Tr. at 58–61.)  The State immediately objected to that line of questioning, and the Court requested a sidebar to inform defense counsel that he could not inquire into that area.  (Tr. at 61.)  The Court told defense counsel that the victim's activities in his backyard for which he was not convicted had nothing to do with the case, and "you can't tie it into bias." *Id.*  Defense counsel asked that the court note his objection based on the fact that the activities went to the victim's motive to lie.  *Id.*

        The Defendant argues that his attorney failed to proffer any additional questions that he would have asked the victim or proffer the testimony of the victim to determine if it would be admissible.  While he also indicates that his attorney failed to object and state a basis, the record indicates that defense counsel did in fact object to the court's limitation of cross-examination and stated that the line of questioning was relevant to the victim's motive to fabricate.  In any case, the Defendant has failed to allege how his attorney's failure to proffer additional questions or the victim's testimony was ineffective assistance.  The record indicates that defense counsel simply wanted to elicit that the victim had been placed on felony probation based on an offense for which adjudication had been withheld, which would not be proper impeachment.  *See State v. Jouzdani*, 98 So. 3d 1264 (Fla. 1st DCA 2012).  Furthermore, the fact that the victim was on felony probation in the 1990's does not appear to have any relevance to the victim's alleged "motive to fabricate" concerning the crime in the instant case that occurred in 2009.  In any case, the Defendant does not even state what additional questions his attorney could have asked or what a proffer of testimony from the victim would have revealed.

> Further, he does not explain how this could have led to relevant and admissible
> testimony in the case.  Without any specific errors or omissions, the Defendant's
> conclusory allegations are insufficient to warrant relief.  *See Franqui v. State*, 59 So.
> 3d 82, 96 (Fla. 2011); *see also Kennedy v. State*, 547 So. 2d 912 (Fla. 1989)
> (conclusory and speculative allegations are insufficient to warrant an evidentiary
> hearing).

(Ex. U at 108–10).  Petitioner appealed the decision to the First DCA, and the appellate court

affirmed the lower court's decision without written opinion (Ex. W).

The record supports the state court's finding that Petitioner did not allege what additional

questions defense counsel could have asked the victim, or what additional testimony from the victim

a proffer would have revealed, aside from the information proffered by defense counsel during the

sidebar (that the victim was on felony probation and was growing pot).  In the absence of any

allegation as to the content of any additional proffer that defense counsel allegedly should have

made, the state court reasonably concluded that Petitioner failed to show a reasonable probability

of a different outcome if defense counsel made a different proffer.  Therefore, Petitioner is not

entitled to relief on this claim.

### b. Sub-claim B

In sub-claim B, Petitioner claims that defense counsel failed to preserve the issue of the trial

court's overruling counsel's objections to two of the prosecutor's comments during closing

arguments.  Petitioner contends counsel should have argued that the first comment was an improper

comment on facts not in evidence, and the second comment shifted the burden of proof to Petitioner.

Petitioner raised this claim as Claim #1, sub-claim B, in his Second Amended Rule 3.850 motion

(Ex. T2 at 80–82). The state circuit court adjudicated the claim as follows:

> **Subclaim B**
>
> In subclaim B, the Defendant asserts that counsel was ineffective for failing
> to state a basis for his objection to two improper prosecutorial comments that were
> not supported by the evidence or shifted the burden of proof to the Defendant.  The
> Defendant claims that, because his attorney failed to state a basis for the objections,
> the issue was not preserved on appeal.  The Defendant alleges that he was prejudiced
> during his trial and even through direct appeal when his appellate counsel attempted
> to raise the unpreserved error.

During closing arguments, the prosecutor commented on the defense's theory that the incident was a neighborhood dispute.  (*See* Closing Arguments at 159–76.) He stated,

> "We also know that he had been caught coming out of Mr. Taylor's shed.  Police weren't called.  Couldn't prove that anything was taken. And then when he was long haul trucking he had a couple of burglaries in his house, some change was taken.   There was a neighborhood scuttlebutt but no proof.  A revolver he had was taken. And he got it back from the guy who got it from the defendant."

(Trial Tr. at 160.)  Upon hearing this remark, defense counsel objected, and the Court overruled the objection.   *Id.*   The second remark was made during the State's rebuttal, when the prosecutor stated,

> "Remember opening?  We heard that you were going to hear in evidence how the defendant [sic] carried this bat around the neighborhood.  I thought we were going to hear something about him being on neighborhood watch or something, taking his time patrolling around the streets and stuff.  Where was that?  Where was the evidence that Mr. Taylor marches up and down on the neighborhood streets waving his bat at people?"

(Tr. at 174.)  Again, defense counsel objected to this comment, and it was overruled by the trial court.  *Id.*

The Defendant asserts that counsel was ineffective for failing to state an objection on the record, and the failure to do so caused him to be prejudiced during trial and on appeal.   Although the Defendant asserts that the first comment concerning the break-ins at the victim's home was not supported by the evidence, the victim himself testified concerning these incidents when asked on cross-examination and redirect.  (Tr. at 56–59; 69.)  In addition, the second statement was made in rebuttal to the defense's opening statement and closing arguments that the victim carries a baseball bat to patrol the neighborhood.  (Tr. at 23–25; 166.)  Therefore, these statements were fair comments on the evidence presented at trial and also an invited response to defense counsel's statements.  *See Patrick v. State*, 104 So. 3d 1046, 1065 (Fla. 2012) ("Closing arguments allow the State and defense to review the evidence and to explicate those inferences that may reasonably be drawn from the evidence.");  *Mitchell v. State*, 771 So. 2d 596, 597 (Fla. 3d DCA 2000) (determining that the statement "where is the evidence in this case of crooked cops? You had many cops appear before you on the witness stand," was fair response to defense counsel's opening and closing statements that focused on the defense theory of the police knowingly misidentifying the defendant as the perpetrator).

In any case, the Defendant has simply not demonstrated any prejudice.  The two complained of comments were based on the evidence or were at the very least invited responses to defense counsel's statements.  The Defendant has not even argued that, had counsel stated a basis for an objection, the objections would have been sustained or that the appellate court would have reversed based on these two isolated comments.  When viewed in the context of the entire closing arguments, the Defendant has simply not demonstrated how these two comments were significant enough to taint the entire trial to the point that there is a reasonable probability the outcome would have been different.  *See Spencer v. State*, 842 So. 2d 52 (Fla. 2003) ("In order for an error to be fundamental and justify reversal in the absence of a timely objection, 'the error must reach down into the validity of the trial itself to the extent that a verdict of guilty could not have been obtained without the assistance of the alleged error.'").

(Ex. U at 111–12).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. W).

Under Florida law, the standard for reviewing prosecutorial comments is the following:

Wide latitude is permitted in arguing to a jury.  Logical inferences may be drawn, and counsel is allowed to advance all legitimate arguments.  The control of comments is within the trial court's discretion, and an appellate court will not interfere unless an abuse of such discretion is shown.  A new trial should be granted when it is "reasonably evident that the remarks might have influenced the jury to reach a more severe verdict of guilt than it would have otherwise done."  Each case must be considered on its own merits, however, and within the circumstances surrounding the complained-of remarks.

Breedlove v. State, 413 So. 2d 1, 8 (Fla. 1982) (quoting Darden v. State, 329 So. 2d 287, 289 (Fla. 1976)) (other citations omitted).  This state rule is essentially the same as the federal due process standard governing allegedly improper argument by the prosecution.  A prosecutor may argue both facts in evidence and reasonable inferences from those facts.  *See* Tucker v. Kemp, 762 F.2d 1496, 1506 (11th Cir. 1985) (citations omitted).  But if the evidence is too insubstantial to support a reasonable inference, the prosecutor's comment will be deemed improper.  *Id.* at 1507.  Prosecutors must observe the distinction between the permissible practice of arguing evidence and suggesting inferences which the jury may reasonably draw from it and the impermissible practice of arguing suggestions beyond the evidence.  *See* United States v. Simon, 964 F.2d 1082, 1086 (11th Cir. 1992) (citation omitted).

Further, the prosecutor is not limited to a bare recitation of the facts; he may comment on the evidence and express the conclusions he contends the jury should draw from the evidence. United States v. Johns, 734 F.2d 657, 663 (11th Cir. 1984).  A prosecutor may comment on the uncontradicted or uncontroverted nature of the evidence and may point out that there is an absence of evidence on a certain issue during closing argument to the jury.  *See* White v. State, 377 So. 2d 1149 (Fla. 1980).  Prosecutorial comment upon a general lack of defense evidence is also permissible.  *See* Smiley v. State, 395 So. 2d 235 (Fla. 1st DCA 1981).  Additionally, a prosecutor may reply to remarks, comments or assertions made by defense counsel.  *See* United States v. Young, 470 U.S. 1, 11–13, 105 S. Ct. 1038, 84 L. Ed.2 d 1 (1985) (when prosecutor's comments are an "invited reply" in response to defense counsel's own remarks, and he "[does] no more than respond substantially in order to 'right the scale,' such comments would not warrant reversing a conviction") (citations omitted).

The trial transcript confirms the state court's determination that the facts which were the subject of the prosecutor's first comment were in evidence.  Defense counsel and the prosecutor elicited testimony from Mr. Taylor that on previous occasions, (1) Mr. Taylor caught Petitioner coming out of his shed, (2) change was stolen from Mr. Taylor's trailer, and (3) a revolver was stolen from Mr. Taylor's trailer, and it was returned to Taylor from someone who was fairly certain as to how it was stolen (Ex. D at 56–59, 69).  Mr. Taylor also testified that he believed it was Petitioner who stole the pistol from him (*id*. at 56–57).  Because the prosecutor's comment was based upon facts in evidence, and reasonable inferences from those facts, the state court reasonably concluded that Petitioner failed to show he was prejudiced by defense counsel's failure to state a legal basis for his objection to the prosecutor's comment.

As to the second prosecutorial comment, the transcript confirms the state court's determination that the comment was made in rebuttal to defense counsel's opening statement and closing argument.  In his opening statement, defense counsel stated:

> [T]he evidence will show that Mr. Barry [sic] carries this baseball bat, that the prosecutor talks about, with him when he's on patrol in the neighborhood.  And he carries this bat and sort of goes around in front of his house with this Louisville Slugger, or whatever it is, which by the way is never recovered by the police.  It is never offered by Mr. Barry—excuse me, Mr. Taylor, the alleged victim on the night

that he calls the police, he never offers to show it to him and they never even take it. But, he's in the neighborhood on patrol with this baseball bat.  And over the course of 2009, starting in about March, he accosts Mr. Barry, the defendant, about four or five times.  He walks around through these woods—

MR. FAUCHEUX:  Your Honor, may we approach.

### AT THE BENCH

MR. FAUCHEUX:  I would interpose an objection to the continuing attempt to impeach the witness before he has even taken the stand with a rendition of bad acts, alleged bad acts that occurred before this.  It has no relevance to this case.

THE COURT:   Are they acts directed towards the defendant or other individuals?

MR. MANN:  Yes, towards the defendant.

MR. FAUCHEUX:  I don't know, I've never heard about this accosting people.  We deposed witnesses, I've just never heard—

THE COURT:  I think if he intends to put on evidence that your client had a bias against the defendant because of prior encounters with him that would go to your client's credibility.

MR. FAUCHEUX:  Then he opens the door for my client to say what the real bias was.

THE COURT:  Granted.

MR. MANN:  That's fine, understood.

THE COURT:  So limit your comments to what you believe the evidence will show and try to move along with the show.

### IN OPEN COURT

MR. MANN:  (Continuing) The evidence will show that Mr. Taylor believed by 2009 that Mr. Barry had, in fact, stolen property from him in the past.  He will presumably testify, the evidence will show that he believes Mr. Barry stole a pistol from him, from his home.  He never reported that to the police, never saw Mr. Barry go into his home, never saw Mr. Barry with the pistol.  But the neighborhood gossip in Southport was, oh, those Barry boys, must have been Mr. Barry.  And so Mr.

Taylor believes that and he's on patrol with his bat by 2009.  Mr. Taylor also believes to this day that Mr. Barry came into his trailer and stole some change from his bedroom.  Again, there is not one bit of evidence of that, he never reported it to the police.  When pressed, he will testify, well, that was the gossip in the neighborhood. Mr. Taylor believes that on another occasion he saw Mr. Barry coming out of his shed somewhere on the back side of his property saying that he was putting something in a jacket.  Nothing was taken, nothing was reported to the police, there is no evidence of any of this other than Mr. Taylor's belief that something was going on and it was Mr. Barry that did this.

(Ex. D at 23–26).

During closing argument, defense counsel argued:

He [Mr. Taylor] never, you know, he never gave you that. He never gave up the bat. No bat.  You know, this is an investigation of a potentially violent incident.  Nobody asked for the bat, nobody gets the bat, nobody has offered the bat.  He denied carrying the bat around the neighborhood or using the bat in any kind of fashion, you know, to say don't tread on me.  And yet you have Robinson saying, hey, he shook the bat at me.  You know, that doesn't hold water.

(Ex. D at 166).

The prosecutor argued in rebuttal:

I thought we were going to hear something about him [Mr. Taylor] being on neighborhood watch or something, taking his time patrolling around the streets and stuff.  Where was that?  Where was the evidence that Mr. Taylor marches up and down on the neighborhood streets waving a bat at people?

(Ex. D at 186).  This comment was an "invited reply" to remarks, comments and assertions made by defense counsel.  The state court reasonably concluded that the comment was not improper, and that Petitioner failed to show he was prejudiced by defense counsel's failure to articulate a legal basis for his objection.  Therefore, Petitioner is not entitled to relief on this claim.

c.      Sub-claim C

In sub-claim C, Petitioner claims that defense counsel was ineffective for failing to preserve the issue of the trial court's overruling counsel's objection to Deputy Lilley's testimony regarding the credibility of Petitioner's version of the events underlying the charge.  Petitioner contends defense counsel should have supported his objection with argument that Deputy Lilley's testimony constituted an opinion as to Petitioner's guilt and essentially allowed the State to shift the burden of proof to the defense.  Petitioner raised this claim as Claim #1, sub-claim C, in his Second

Amended Rule 3.850 motion (Ex. T2 at 82–85). The state circuit court adjudicated the claim as follows:

### Subclaim C

In subclaim C, the Defendant alleges that counsel was ineffective for objecting during the police officer's testimony but failing to provide argument supporting his objections.  The Defendant states that he was prejudiced by the officer's testimony, since she passed on the credibility of the Defendant's statements to police.  In addition, the Defendant asserts that she also lauded the veracity of the victim's story.  He asserts that this testimony was damaging, because the case was essentially a credibility contest between the victim and the Defendant.  The Defendant also complains that his attorney did not object based on the fact that the State was shifting the burden of proof onto the Defendant.

During Deputy Lilley's testimony, she explained on direct examination that she investigated the altercation between the Defendant and victim, and that the Defendant gave two different versions of the incident after he was *Mirandized*.  (Tr. at 80–87.)  First, the Defendant relayed that he was on the way to the convenience store when he saw the victim waiting for him in the middle of the road with a baseball bat.  He asserted that he continued to the store while the victim ran down the road yelling at him.  (Tr. at 80.)  In another version, the Defendant was on his way back from the store, when the victim started chasing him.  The Defendant asserted that his pants started to fall down, so he dropped the soda bottle he was carrying, pulled up his pants, and ran across a ditch while the victim ran after him. (Tr. at 80–82.)  The prosecutor asked Deputy Lilley whether she attempted to make sense of these accounts by asking him additional questions.  The deputy replied that she asked him whether there had been other physical confrontations between them, and "why would he just all of the sudden out of the blue show up in the middle of the road with a baseball bat waiting for you on your way to the store.  That didn't make sense."  (Tr. at 82.)  At this point, defense counsel objected to her gratuitous comment, stating that she was passing on the credibility of the Defendant's statement.  The Court asked that the deputy only answer the question that was asked. (Tr. at 83.)  The prosecutor continued by asking for the Defendant's explanation about whether or not there had been prior confrontations between the two, which caused defense counsel to again object and request a sidebar.  (Tr. at 83.)  Defense counsel argued that the deputy was commenting on the fact that the Defendant couldn't explain his version of the events.  The State argued that she had *Mirandized* him, he waived his rights, and gave answers.  Further, the State pointed out that the Defendant told the deputy that there had not been prior confrontations, which was the defense's theory.  Thus, they opened the door to such questioning.  (Tr. at 84.) The Court found that the testimony regarding the Defendant's answers to the deputies [sic] questioning was a statement by a party opponent and was admissible.

*Id.* After the State resumed questioning, defense counsel continued to object based on his prior objection overruled by the Court. *Id.*

> The Defendant complains that his attorney offered no basis for the objection, and therefore it was unpreserved for appeal. However, the record demonstrates that defense counsel did object to the testimony about which the Defendant now complains. He precisely stated that he objected to the officer injecting gratuitous comments into her testimony, and also pointed out that she was passing on the credibility of the Defendant's statement. (Tr. at 82–83.) Further, when the prosecutor began questioning the officer regarding her questioning the Defendant about the victim's animosity toward him, counsel objected many other times to prevent the deputy from testifying regarding "her own notion that he couldn't give an explanation of that." (Tr. at 83.) However, the Court properly overruled defense counsel's numerous objections, as the deputy was simply conveying her interactions with the Defendant that led up to his eventual arrest. *See Jones v. State*, 949 So. 2d 1021, 1039 (Fla. 2006) (holding that law enforcement's testimony that he doubted the veracity of the defendant's statement at the time of the interview was not a prohibited comment on the defendant's credibility, as the officer was simply testifying regarding the events leading up to the defendant's eventual confession but did not comment on the truthfulness of any witness who testified at trial). While the Defendant argues that his attorney should have instead argued that the State was shifting the burden of proof to the defense, defense counsel cannot be found ineffective simply because he does not put forth the same arguments that the Defendant contends he should have. *See, e.g., Routly v. Wainwright*, 502 So. 2d 901,903 (Fla. 1987) ("The fact that the case might conceivably have been argued in a different manner in no way points to inadequate representation on appeal"); *Davis v. State*, 928 So. 2d 442 (Fla. 5th DCA 2006) (the fact that a case may have been argued a different way, without pointing to specific errors or omissions in counsel's performance, is not enough to prove inadequate representation). As the Defendant has failed to demonstrate that counsel's actions fell below an objective standard of reasonableness, the Defendant has not demonstrated the first prong of *Strickland*. Thus, subclaim C is without merit.

(Ex. U at 112–13). Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. W).

The trial transcript supports the state court's determination that one of the objections made by defense counsel during Deputy Lilley's testimony was that she was giving her opinion as to the credibility of Petitioner's version of the events (Ex. D at 82–83). Defense counsel also argued that Deputy Lilley's testimony regarding Petitioner's failure or inability to explain certain parts of his

story was an improper comment on his right not to be compelled to be a witness against himself (*id.* at 83–84).  The trial court overruled defense counsel's objections.

The Sixth Amendment does not guarantee Petitioner the right to perfect counsel; it promises only the right to effective assistance.  *See* Burt, 134 S. Ct. at 18; Waters v. Thomas, 46 F.3d 1506, 1512 (11th Cir. 1995) (en banc) (the Strickland test "has nothing to do with what the best lawyers would have done.  Nor is the test even what most good lawyers would have done.  We ask only whether some reasonable lawyer at the trial could have acted, in the circumstances, as defense counsel acted at trial.").  Here, the state court reasonably applied Strickland in concluding that defense counsel provided reasonable, effective assistance in objecting to Deputy Lilley's testimony regarding Petitioner's statements to her during her investigation of the crime.  Therefore, Petitioner is not entitled to relief on this claim.

     E.     Ground Five:  "Trial counsel was ineffective for not objecting to the jury instruction's [sic] relating to the fact that the jury was deprived of the consideration of convicting of the separate component offenses of a compound offense such as burglary with a battery, thus violating Petitioner's Sixth and Fourteenth Amendments [sic] of the U.S. Constitution, and Article 1 and 9 of the Florida Constitution."

Petitioner asserts defense counsel was ineffective for failing to request a jury instruction on the "separate component" offenses of trespass and simple battery, instead of only the "compound" offense of burglary with a battery (doc. 1 at 13).  He alleges if counsel had requested an instruction on the "separate component offenses," the jury may have found him guilty of trespass or battery or both (*id.*).  He further contends counsel's failure to request the instruction deprived him of appellate review of the issue (*id.*).  Petitioner states he raised this claim in his Rule 3.850 motion (*id.* at 13–14).

Respondent contends the state court's adjudication of this claim was not contrary to or an unreasonable application of clearly established federal law (doc. 27 at 44–47).

     1.     Clearly Established Federal Law

The Strickland standard, set forth *supra*, governs this claim.

     2.     Federal Review of State Court Decision

Petitioner raised this claim as Claim #2 in his second amended Rule 3.850 motion (Ex. T2 at 85–87).  The state circuit court adjudicated the claim as follows:

In Ground Two, the Defendant alleges ineffective assistance of counsel for failing to object to the jury instructions.  The Defendant asserts that the charged offense is a compound offense, and the jury should have been allowed to convict of two component offenses, rather than the single offense for which he was charged. Instead, he was convicted of a first degree felony.  He states that counsel agreed to the jury instructions and verdict form.  The Defendant argues that the jury could have found that he had no criminal intent upon entering the truck, but later developed intent to commit an offense, such as battery.  In such a situation, he would have committed a trespass and battery, not a burglary.  He claims that this prejudiced him, since trespass and battery are two misdemeanors, while burglary with a battery was a first degree felony.  The Defendant complains that his attorney failed to object to the instruction, which led to the error not being preserved on appeal.

The Defendant's claim is without merit.  Although defendants are entitled to request an instruction and verdict form that would have permitted the jury to return a verdict of trespass with a battery, the failure to provide such an instruction or include the offense on the verdict form is not fundamental error.  *See Gregory v. State*, 937 So. 2d 180, 183 (Fla. 4th DCA 2006); *Giangrasso v. State*, 793 So. 2d 71 (Fla. 4th DCA 2001).  Furthermore, the Defendant cannot demonstrate his counsel's failure to request such an instruction or object to the absence of such an instruction was ineffective assistance of counsel resulting in prejudice.  *See Sanders v. State*, 946 So. 2d 953, 958 (Fla. 2006) ("To assume that, given the choice, the jury would now acquit the defendant of the same crime of which it convicted him, and instead convict of a lesser offense, is to assume that the jury would disregard its oath and the trial court's instructions.").  Thus, Ground Two is due to be denied.

(Ex. U at 113–14).  Petitioner appealed the decision to the First DCA, and the appellate court affirmed the lower court's decision without written opinion (Ex. W).

The state court record demonstrates that the jury was instructed on the lesser included offenses of battery and trespass, and the verdict form included those options (*see* Ex. D at 151–52, Ex. E at 47).  Although the jury was not instructed on the offense of trespass with battery, Petitioner's assertion that he would have been convicted of a lesser included offense is pure speculation and does not undermine this court's confidence in the outcome of his criminal proceeding.  The jury found that that evidence presented at Petitioner's trial was sufficient to sustain a conviction for burglary of a conveyance with a battery; therefore, even assuming without deciding that Petitioner's counsel was deficient for failing to request a jury instruction on other lesser included offenses, that deficiency does not suggest that there was a reasonable probability that the outcome would have been different.  *See* Strickland, 466 U.S. at 693–94 (explaining that a reviewing

court should presume that the jury acted according to law).  Furthermore, the jury would have performed its duties in violation of the law had it convicted Petitioner of a lesser offense in the face of sufficient evidence to convict of the greater offense.  *See id.* at 694–95 ("An assessment of the likelihood of a result more favorable to the defendant must exclude the possibility of arbitrariness, whimsy, caprice, "nullification," and the like.  A defendant has no entitlement to the luck of a lawless decisionmaker, even if a lawless decision cannot be reviewed.  The assessment of prejudice should proceed on the assumption that the decisionmaker is reasonably, conscientiously, and impartially applying the standards that govern the decision.").

The state court's rejection of Petitioner's claim was not an unreasonable application of Strickland.  Therefore, he is not entitled to federal habeas relief on Ground Five.

F.    Ground Six:  "Cumulative error effect [sic] analysis of Defendant's claims of ineffective assistance of counsel for failing to preserve these issues on direct appeal violating Defendant's Sixth and Fourteenth Amendments [sic] of the U.S. Constitution, and Article One and Nine of the Florida Constitution."

Petitioner contends the state post-conviction court erred by summarily denying his claim that the cumulative effect of the alleged errors of defense counsel, asserted *supra* in Grounds Four and Five, contributed to his conviction (doc. 1 at 14–15).

Respondent contends that to date, the Supreme Court has not held that distinct constitutional claims can be cumulated to grant habeas relief; and some federal courts have held that claims of cumulative error are not cognizable on habeas review (doc. 27 at 48–50).  Respondent contends even if the claim is cognizable, Petitioner is not entitled to relief, because he failed to demonstrate that the state court's adjudication of the claim was contrary to or an unreasonable application of clearly established federal law (*id.* at 49–50).

The Supreme Court has not recognized the cumulative error doctrine in the context of ineffective assistance of counsel claims.[10]  Although the Eleventh Circuit has noted, on direct appeal

---

[10] The Eleventh Circuit has noted "the absence of Supreme Court precedent applying cumulative error doctrine to claims of ineffective assistance of counsel."  Forrest v. Fla. Dep't of Corr., 2009 WL 2568185, at *4 (11th  Cir. Aug. 21, 2009) (unpublished).  The court cautioned that the Supreme Court has held that "there is generally no basis for finding a Sixth Amendment violation unless the accused can show how specific errors of counsel undermined the reliability of the finding of guilt."  *Id.* at 5 (quoting United States v. Cronic, 466 U.S. 648, 659 n.26, 104 S. Ct. 2039, 80 L. Ed. 2d 657 (1984)).

of a federal conviction, that the cumulative effect of several errors that are harmless by themselves could so prejudice the defendant's right to a fair trial that a new trial may be necessary,[11] the Eleventh Circuit has never expressly recognized a freestanding "cumulative effect" claim, based upon the assertion that alleged errors of the trial court, defense counsel, or the State, or a combination thereof, rendered the trial fundamentally unfair even though such errors were individually harmless or non-prejudicial, as cognizable under § 2254.  *See, e.g.,* Morris v. Sec'y, Dep't of Corr., 677 F.3d 1117, 1132 (11th Cir. 2012) (refusing to decide whether, under the current state of Supreme Court precedent, cumulative error claims reviewed through the lens of AEDPA can ever succeed in showing that the state court's decision on the merits was contrary to or an unreasonable application of clearly established law); Conklin v. Schofield, 366 F.3d 1191, 1210 (11th Cir. 2004) (applying pre-AEDPA standard of review and denying claim that trial court errors and conduct of trial counsel combined to rob petitioner of fair trial and sentencing, but not relying upon Supreme Court precedent for its decision); Sims v. Singletary, 155 F.3d 1297 (11th Cir. 1998) (applying pre-AEDPA standard of review and holding that district court erred in finding that cumulative guilt stage errors prejudiced petitioner during penalty phase); Cargill v. Turpin, 120 F.3d 1366, 1386 (11th Cir. 1997) (applying pre-AEDPA standard of review and declining petitioner's invitation to entertain "cumulative error" claim because petitioner's trial was not fundamentally unfair); Dobbs v. Kemp, 790 F.2d 1400, 1505 (11th Cir. 1986) (applying pre-AEDPA standard of review and denying petitioner's claim that improper prosecutorial argument and evidentiary errors rendered trial fundamentally unfair and citing Donnelly v. DeChristoforo, 416 U.S. 637, 94 S. Ct. 1868, 40 L. Ed. 2d 431 (1973)); Bronstein v. Wainwright, 646 F.2d 1048, 1056 (5th Cir. 1981) (same).

---

[11] *See* United States v. Baker, 432 F.3d 1189, 1223 (11th Cir. 2005) ("The cumulative error doctrine provides that an aggregation of non-reversible errors (i.e., plain errors failing to necessitate reversal and harmless errors) can yield a denial of the constitutional right to a fair trial, which calls for reversal.") (internal quotations and citations omitted); United States v. Ramirez, 426 F.3d 1344, 1353 (11th Cir. 2005) ("[T]he 'cumulative effect' of multiple errors may so prejudice a defendant's right to a fair trial that a new trial is required, even if the errors considered individually are non-reversible.") (quoting United States v. Thomas, 62 F.3d 1332, 1343 (11th Cir.1995)), United States v. Adams, 74 F.3d 1093, 1099–1100 (11th Cir. 1996) (citing United States v. Preciado-Cordobas, 981 F.2d 1206, 1215 n.8 (11th Cir. 1993)).

In any event, cumulative error analysis should evaluate only matters determined to be in error, not the cumulative effect of non-errors.  *See* United States v. Waldon, 363 F.3d 1103, 1110 (11th Cir. 2004) (where no individual errors have been demonstrated, no cumulative errors can exist).  Thus, Petitioner must show error with respect to at least two of his individual claims.

As previously discussed, Petitioner has not shown error of a constitutional dimension with respect to any of the alleged errors of trial counsel.  Therefore, he is not entitled to federal habeas relief on this "cumulative error" claim.

V.    CERTIFICATE OF APPEALABILITY

As amended effective December 1, 2009, § 2254 Rule 11(a) provides that "[t]he district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant," and if a certificate is issued "the court must state the specific issue or issues that satisfy the showing required by 28 U.S.C. § 2253(c)(2)."  A timely notice of appeal must still be filed, even if the court issues a certificate of appealability.  Rule 11(b), Rules Governing Section 2254 Cases.

The undersigned finds no substantial showing of the denial of a constitutional right.  28 U.S.C. § 2253(c)(2); Slack v. McDaniel, 529 U.S. 473, 483–84, 120 S. Ct. 1595, 1603–04, 146 L. Ed. 2d 542 (2000) (explaining how to satisfy this showing) (citation omitted).  Therefore, the undersigned recommends that the district court deny a certificate of appealability in its final order.

The second sentence of new Rule 11(a) provides:  "Before entering the final order, the court may direct the parties to submit arguments on whether a certificate should issue."  Thus, if there is an objection to this recommendation by either party, that party may bring this argument to the attention of the district judge in the objections permitted to this report and recommendation.

Accordingly, it is respectfully **RECOMMENDED**:

1.    That the petition for writ of habeas corpus (doc. 1) be **DENIED**.

2.    That a certificate of appealability be **DENIED**.

At Pensacola, Florida, this 28th day of May 2015.


/s/ *Elizabeth M. Timothy*
**ELIZABETH M.  TIMOTHY**
**CHIEF UNITED STATES MAGISTRATE JUDGE**

## NOTICE TO THE PARTIES

       Objections to these proposed findings and recommendations must be filed within fourteen (14) days after being served a copy thereof.  **Any different deadline that may appear on the electronic docket is for the court's internal use only, and does not control**.  A copy of objections shall be served upon all other parties.  If a party fails to object to the magistrate judge's findings or recommendations as to any particular claim or issue contained in a report and recommendation, that party waives the right to challenge on appeal the district court's order based on the unobjected-to factual and legal conclusions.  *See* 11th Cir. Rule 3-1; 28 U.S.C. § 636.